**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARK BREINER DDS, LLC and EMSCULPT OF CT, L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> BTL INDUSTRIES, INC., <br><br> Defendant. | Case No. 1:24-CV-12413-FDS |

<u>**DEFENDANT BTL INDUSTRIES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COUNT II
OF PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

I.    BACKGROUND ................................................................................................... 1

II.   LEGAL STANDARD ........................................................................................... 3

III.  ARGUMENT ........................................................................................................ 3

    A.   Plaintiffs Fail to Plead Any Cognizable Antitrust Claim and Lack Standing ......... 3

        1.   Plaintiffs Fail to Plead Market Power in a Relevant Market. ..................... 4

        2.   BTL's MAP Program Does Not Restrain Trade and is Not a Vertical Price-Fixing System ................................................................................. 7

        3.   Plaintiffs Lack Standing to Bring Their Sherman Act Claim ..................... 9

    B.   Plaintiffs Fail to State a Claim Under Section 1 of the Sherman Act. ................... 12

    C.   Plaintiffs Fail to State a Claim Under Section 2 of the Sherman Act. ................... 13

IV.  CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................3, 7

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).....................................................................................................9

*Barry Wright Corp. v. ITT Grinnell Corp.*,
    724 F.2d 227 (1st Cir. 1983)......................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................... *passim*

*Bock v. Sloane*,
    675 F. Supp. 3d 176 (D. Mass. 2023) ......................................................................12

*Bos. Sci. Corp. v. Schneider (Eur.) AG*,
    983 F. Supp. 245 (D. Mass. 1997) ............................................................................14

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
    36 F. 3d 1147 (1st. Cir. 1994)...................................................................................14

*Díaz Aviation Corp. v. Airport Aviation Servs. Inc.*,
    716 F.3d 256 (1st Cir. 2013)........................................................................................5

*Dr. Miles Medical Co. v. John D. Park & Sons Co.*,
    220 U.S. 373 (1911) ....................................................................................................8

*E. Food Servs. v. Pontifical Cath. Univ.*,
    357 F. 3d 1 (1st Cir. 2004)...........................................................................................5

*Evergreen Partnering Grp. v. Pactiv Corp.*,
    720 F. 3d 33 (1st Cir. 2013).......................................................................................12

*Flovac, Inc. v. Airvac, Inc.*,
    817 F.3d 849 (1st Cir. 2016)........................................................................................4

*George R. Whitten Jr. v. Paddock Pool Bldrs., Inc.*,
    508 F.2d 547 (1st Cir. 1974)........................................................................................5

*Ill. Tool Works Inc. v. Independent Ink, Inc.*,
    547 U.S. 28 (2006).................................................................................................7, 14

*In re Lantus Direct Purchaser Antitrust Litig.*,
  950 F.3d 1 (1st Cir. 2020)............................................................................13, 14

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007)...........................................................................................4

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984).........................................................................................13

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)...........................................................................................4

*Quanta Comput., Inc. v. LG Electronics, Inc.*,
  553 U.S. 617 (2008).........................................................................................11

*RSA Media, Inc, v. Media Grp., Inc.*,
  260 F.3d 10 (1st Cir. 2001)..............................................................................11

*Ruiz v. Bally Total Fitness Holding Corp.*,
  496 F.3d 1 (1st Cir. 2007).................................................................................3

*Schor v. Abbott Labs.*,
  457 F.3d 608 (7th Cir. 2006) ............................................................................7

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6 (1st Cir. 1999).................................................................................9

*Sterling Merch., Inc. v. Nestlé, S.A.*,
  656 F.3d 112 (1st Cir. 2011)..................................................................... *passim*

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
  373 F.3d 57 (1st Cir. 2004)...............................................................................8

*Sullivan v. Nat'l Football League*,
  34 F. 3d 1091 (1st Cir. 1994)............................................................................8

*Sullivan v. Tagliabue*,
  25 F.3d 43 (1st Cir. 1994).................................................................................9

*Town of Concord v. Bos. Edison Co.*,
  915 F.2d 17 (1st Cir. 1990)..............................................................................13

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919).........................................................................................12

*Vázquez-Ramos v. Triple-S Salud, Inc.*,
  55 F.4th 286 (1st Cir. 2022)....................................................................3, 4, 5, 9

**Statutes**

Sherman Act, 15 U.S.C. § 1 *et seq.*.............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................3

Plaintiffs' Sherman Act claim is their fourth attempt to cast BTL Industries, Inc.'s Minimum Advertised Price ("MAP") program as a violation of antitrust laws. This newest attempt fares no better than Plaintiffs' prior attempts. This Court already dismissed Plaintiffs' Robinson-Patman Act claim based on the *same* operative facts, holding that the MAP program "amounts to nothing more than an incentive program" that was "available to all customers." Dkt. 32 at 10. Plaintiffs have now repackaged that rejected theory as a Sherman Act violation. But Plaintiffs—who lack prudential antitrust standing—cannot allege any actionable antitrust claim for several reasons: there is no defined relevant market; there is no alleged anticompetitive actions or injury; there is no alleged monopoly power; and there is no alleged conspiracy or improper means. In other words, Plaintiffs' Sherman Act claims fail for all the same reasons (and more) as their prior deficient antitrust claims.[1]

## I.    BACKGROUND

Plaintiffs are Connecticut-based limited liability companies that purchased body-contouring equipment from BTL in May and June 2021, including the Emsculpt Neo equipment. Dkt. 42 (Second Amended Complaint or "SAC") ¶¶ 4–5, 21–22. The Emsculpt Neo sales agreement contained an optional MAP program under which Plaintiffs could receive benefits (*i.e.*, discounted consumable applicators, free service coverage, and access to BTL's online provider list) in exchange for advertising Emsculpt Neo sessions at $850 or above. *Id.* ¶¶ 25–29; *see also* SAC Ex. A. Plaintiffs' sole member, Mark Breiner, executed and agreed to the Emsculpt Neo Terms of Use, which detailed the consequences for declining to participate in, or withdrawing from, the MAP program. *See id.* ¶ 21; SAC Ex. A at ECF p. 29.

---

[1] This is BTL's first motion fully addressing why Count II fails to state an actionable claim for relief. This motion does not revisit the futility arguments raised in BTL's opposition to Plaintiffs' motion for leave to amend. *See* Dkt. 34 at 4.

1

In May 2023, Plaintiffs voluntarily withdrew from the MAP program. Dkt. 17-2 at 3 (Exhibit B of BTL's prior Motion to Dismiss attaching Dr. Breiner's May 30, 2023 letter notifying BTL that he was "voluntarily exiting" the MAP program).[2] BTL responded by implementing the contractual consequences: it reverted the consumable applicator price to the non-MAP price and removed Plaintiffs from certain BTL online platforms. SAC ¶¶ 63–64.

Since filing their lawsuit in September 2024, Plaintiffs have filed four iterations of alleged antitrust violations against BTL. *See* Dkt. 1 (Plaintiffs' original complaint, alleging a violation of Massachusetts unfair trade practices statutes and Massachusetts antitrust law); Dkt. 21-1 (Plaintiffs' first amended complaint, alleging the same state-law claims and adding an alleged violation of the Robinson-Patman Act); Dkt. 33-2 (Plaintiffs' proposed second amended complaint, alleging the same violations of state unfair trade practices and antitrust statutes, and— for the first time—a violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*); Dkt. 42 (Plaintiffs' operative Second Amended Complaint, alleging a violation of the Sherman Act). To date, this Court has dismissed every antitrust violation from Plaintiffs' prior complaints. *See* Dkt. 32 at 8– 11 (dismissing Plaintiffs' Robinson-Patman Act claim); Dkt. 40 at 6–13 (dismissing all of plaintiffs' state-law antitrust claims). And this Court only permitted Plaintiffs' operative Count II (Sherman Act) to proceed with "considerable misgivings," expressly noting that the claim was "not obviously futile at the pleading stage." Dkt. 40 at 27 & 30.

---

[2] Plaintiffs continue to allege that Breiner submitted this letter on November 30, 2023, *see* SAC ¶ 62, despite BTL having previously noted this factual error and this Court taking notice of the May 30, 2023 letter because "(1) plaintiffs [did] not contest the veracity of the submitted letter and (2) the document is central to plaintiffs' asserted claims" Dkt. 32 at 6 n.7.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, which requires "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And although the Court must assume the truth of well-pleaded facts and draw reasonable inferences in the plaintiff's favor, *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678.

Antitrust claims are equally subject to these pleading requirements. Indeed, in its seminal decision in *Twombly*, the Supreme Court held that a Section 1 Sherman Act complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made" and that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." 550 U.S. at 556.

## III.    ARGUMENT

### A.  Plaintiffs Fail to Plead Any Cognizable Antitrust Claim and Lack Standing.

Plaintiffs' Count II appears to be premised under two provisions of the Sherman Act: Section 1, "which proscribes contracts and conspiracies in restraint of trade," and Section 2, "which prohibits the monopolization or attempted monopolization of an area of trade." *Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 296 (1st Cir. 2022); *see also* SAC at p. 22 ("Count II – VIOLATION OF THE SHERMAN ACT, 15 U.S.C. §§ 1, 2"). Although each section has unique elements, both have the same fundamental requirements, especially where (like here) the complaint alleges no per se violation of the Sherman Act.

3

The foundational theory of Plaintiffs' Sherman Act claim is that the MAP program constituted an "unreasonable restraint on trade." SAC ¶ 79. Even if the Court were to entertain such a conclusory allegation, the Supreme Court has held that vertical agreements setting minimum resale prices are not *per se* unlawful; instead, they are evaluated under the rule of reason. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007); *Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 123 (1st Cir. 2011) (applying rule of reason analysis to vertical agreements because "[these] agreements can achieve legitimate economic benefits (reduced cost, stable long-term supply, predictable prices)" (cleaned up)); *accord* Dkt. 40 at 30 (this Court recognizing that "even if the MAP program did constitute a vertical price restraint, it is [ ] unclear whether it would in fact violate § 1 of the Sherman Act, because such restraints are evaluated according to the rule of reason").

And where a complaint "alleges no per se violations of the Sherman Act," then both Section 1 and Section 2 claims require Plaintiffs "make a burdensome showing that (1) the agreements in question involved the exercise of power in a particular economic market, (2) that this exercise impaired the competitiveness of the market, and (3) that those impairments outweighed efficiencies or other economic benefits." *Sterling*, 656 F.3d at 123. Because Plaintiffs have not alleged sufficient facts to plausibly allege an antitrust injury in a defined economic market, they cannot satisfy the rule of reason and lack standing to pursue an antitrust claim.

### 1.    Plaintiffs Fail to Plead Market Power in a Relevant Market.

It is essential in the rule of reason analysis that Plaintiffs allege sufficient facts that BTL plausibly "exercise[s] or could exercise a threshold degree of market power." *Vázquez-Ramos*, 55 F.4th at 298 (1st Cir. 2022) (quoting *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 856 (1st Cir. 2016)); *see also Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018) (noting that "courts usually cannot properly apply the rule of reason" in a section 1 claim "without an accurate definition of the

4

relevant market"); *Díaz Aviation Corp. v. Airport Aviation Servs. Inc.*, 716 F.3d 256, 265 (1st Cir. 2013) (explaining that Section 2 "monopoly power" "is typically proven by defining a relevant market and showing that the defendant has a dominant share of that market"). This requires, at a minimum, "enough evidence to permit a reasonable factfinder to define the relevant market," *Vázquez-Ramos*, 55 F.4th at 298, which includes both "the product and geographic market in which competition is allegedly restrained," *E. Food Servs. v. Pontifical Cath. Univ.*, 357 F. 3d 1, 5–6 (1st Cir. 2004) (affirming dismissal of antitrust claim for failure to define a market or allege competitive harm).

In Plaintiffs' fourth iteration of their complaint, they still lack this basic pleading requirement. Plaintiffs' vague market allegations are limited to the following paragraph: "BTL is a monopoly distributor in this market, which is the market to provide treatment sessions through the use of its equipment. BTL's equipment uses patented technology that only BTL possesses and therefore, BTL is the sole distributor of this type of equipment." SAC ¶ 81. This conclusory definition is insufficient to state any Sherman Act claim as it does not identify which specific BTL products comprise the relevant market or identify a geographic territory for the market. Even if BTL *assumes* the territory is the United States and *assumes* the market is all BTL equipment, that definition would be insufficient to survive dismissal.

First, Plaintiffs' own alleged facts plausibly suggest there are substitute products in the market for products supplied by BTL. *See George R. Whitten Jr. v. Paddock Pool Bldrs., Inc.*, 508 F.2d 547, 552 (1st Cir. 1974) (explaining the market for a product is defined "by evaluating the reasonable limits of that product's effective competition with other products . . . that have reasonable interchangeability for the purposes for which [the products] are produced—price, use and qualities considered" (quotation omitted)). In their Second Amended Complaint, Plaintiffs

5

acknowledge that BTL's products are part of a broader "body-contouring and skin-tightening" industry. *See* SAC ¶¶ 7–12. They do not allege (nor could they in good faith) that there are no other device manufacturers in the industry nor explain why medical providers purchasing BTL devices would not consider devices from those manufacturers. This omission is particularly glaring when they concurrently allege that the types of treatments provided by BTL equipment include "muscle toning and muscle strengthening," "break[ing] down fat," "reduc[ing] wrinkles, fine lines, and sagging skin," "targeting all major contributing factors to cellulite," and "improving urinary incontinence in both men and women." *Id.* ¶¶ 8–12. It would be implausible—and belie common sense—for Plaintiffs to suggest this broad market includes only BTL-brand equipment (*id.* ¶ 81) without acknowledging the existence of other well-known equipment (*e.g.*, radiofrequency, laser, or electrical muscle stimulation devices), pharmaceuticals (*e.g.*, GLP-1 agonists, botulinum toxin, or topical creams), or techniques (*e.g.*, surgery, exercise, or physical therapy) that other providers offer for body-contouring, skin-tightening, or incontinence treatment services. It is simply not plausible to assume, without any alleged facts, that BTL's equipment faces no competition in the market. *See Twombly*, 550 U.S. at 570 (plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face").

Second, even if Plaintiffs' proposed market is implausibly limited to BTL equipment, Plaintiffs have alleged facts that preclude an inference that BTL has a monopoly over selling even its own equipment. Specifically, Plaintiffs allege "the emergence of a secondary market for BTL equipment whereby buyers may purchase BTL equipment at astronomical discounts; for example, 75% - 90% off the original equipment price is common in the secondary BTL equipment market." SAC ¶ 41. Plaintiffs also allege that "vertically price-restrained RPM providers compete horizontally with secondary market non-price-restrained BTL equipment owners" *Id.*

6

Finally, Plaintiffs fail to specify which "BTL equipment uses patented technology that only BTL possesses," SAC ¶ 41, and allege "proprietary" technology only for two of the five products at issue in the SAC. *Id.* ¶¶ 8–9. Regardless, a patent confers the lawful right to exclusive use of that technology and "does not necessarily confer market power upon the patentee." *Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 45–46 (2006). And Plaintiffs have not alleged any patent misuse. *Cf. Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) (explaining that "a patent holder is entitled to charge whatever the traffic will bear," so long as it does not engage in anticompetitive activity, and finding no antitrust injury where the defendant patent-holder was "will[ing] sell to anyone willing to pay its price").

Plaintiffs' bare legal conclusion that the MAP program "substantially lessened competition as it completely destroyed any possible competition in the market," without ever defining what or where that market is or plausibly alleging how BTL has any meaningful power in that market, *see* SAC ¶ 79, is the paradigmatic "[t]hreadbare recital" that *Iqbal* and *Twombly* prohibit. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### 2. BTL's MAP Program Does Not Restrain Trade and is Not a Vertical Price-Fixing System

A plaintiff must allege "not only that they were injured as a result of the defendant's actions and that those actions constituted an antitrust violation, but also that their injury is the type of injury the antitrust violation would cause *to competition*." *Sterling*, 656 F.3d at 121 (emphasis in original). As this Court has previously recognized, however, BTL's MAP program is a lawful incentive program for advertising. Dkt. 40 at 30. The MAP program does not constrain the prices that providers charge for treatment sessions, and Plaintiffs have again failed to plead facts suggesting otherwise. Accordingly, the MAP program does not become a "vertical price-fixing

system" (much less one injurious to competition) merely because Plaintiffs incorrectly relabel it as such, *see* SAC ¶ 37, nor is it a compensable antitrust injury under the Sherman Act.

As this Court recognized, Plaintiffs "were not resellers of defendant's equipment: they used defendant's products to provide services to the general public." Dkt. 40 at 30. In the prototypical vertical restraint case, a manufacturer contracts with a dealer to resell goods. Here, Plaintiffs used BTL's equipment to offer *their own services*—a fundamentally different commercial relationship that does not fit neatly within the vertical restraint framework. *Id.* at 29 (citing *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 376 (1911)). More fundamentally, however, the MAP policy restrains only the price that Plaintiffs may advertise, not the price that they charge. Dkt. 42 ¶ 76. Accordingly, Plaintiffs have not stated a claim for a vertical price restraint case.

Nor have Plaintiffs alleged any other injury to competition. Competitive injury "does not mean a simple loss of business or even the demise of a competitor but an impairment of the competitive structure of the market." *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 66 (1st Cir. 2004). Plaintiffs allege only that the MAP was unfavorable to **them**—not that it harmed competition broadly, much less that it harms the "the market to provide treatment sessions through the use of [BTL] equipment." SAC ¶ 81. Competitive harm is "usually measured by a *reduction in output and an increase in prices* in the relevant market," *Sullivan v. Nat'l Football League*, 34 F. 3d 1091, 1097 (1st Cir. 1994) (emphasis in original), yet Plaintiffs allege neither metric occurred in this market. To the contrary, Plaintiffs allege BTL has been "flooding the market with its RPM-governed equipment." SAC ¶¶ 43, 51. If anything, Plaintiffs allege a market with *too much* competition, which does not an antitrust injury make.

8

### 3.    Plaintiffs Lack Standing to Bring Their Sherman Act Claim

And because Plaintiffs fail to plausibly allege that they suffered *any* harm caused by anticompetitive conduct, they lack standing to bring any claim under the Sherman Act. *See e.g., Vázquez-Ramos*, 55 F.4th at 293 (explaining that, to bring antitrust claims, "plaintiffs must not only meet the typical requirements of Article III standing but also the requirements of the so-called 'antitrust standing' doctrine" (citation omitted)); *accord MJ's Mkt., Inc. v. Jushi Holdings, Inc.*, 766 F. Supp. 3d 197, 210–11 (D. Mass. 2025). The Supreme Court has articulated a six-factor test that governs whether a plaintiff has standing to bring an antitrust action:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff;
>
> (2) an improper motive;
>
> (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury");
>
> (4) the directness with which the alleged market restraint caused the asserted injury;
>
> (5) the speculative nature of the damages; and
>
> (6) the risk of duplicative recovery or complex apportionment of damages.

*Sterling*, 656 F.3d at 120 (quotation omitted); *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537–45 (1983). While the six factors are "technically balance[d]," the First Circuit "has emphasized the causation requirement," which is comprised of the first, third, and fourth factors. *Sterling*, 656 F.3d at 121; *MJ's Mkt., Inc.*, 766 F. Supp. 3d at 211 (explaining that "[t]he first and the fourth factors require causation expressly," and that the third factor requires an "antitrust injury"). Indeed, "the absence of 'antitrust injury' will generally defeat standing." *Sterling*, 656 F.3d at 121 (explaining that "[a] competitor may

suffer injury even when there is no injury to competition or to consumers, and so lack standing"); *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10–11 (1st Cir. 1999) (distributor lacked antitrust standing because it did not suffer an antitrust injury); *Sullivan v. Tagliabue*, 25 F.3d 43, 47 (1st Cir. 1994) (finding the absence of an antitrust injury, without a causal link to defendants, outweighed any remaining factors). Here, none of Plaintiffs' alleged harms satisfy the antitrust standing requirement.

Plaintiffs allege that "provider profitability was negatively impacted by [BTL] flooding the market with RPM-governed equipment." SAC ¶ 51. Even if the Court accepts as true the conclusory allegation that Plaintiffs lost money due to an *increase* in competition, these lost profits were not caused by BTL's MAP program or any anti-competitive actions.

Similarly, Plaintiffs allege that BTL's responses to Plaintiffs' voluntary withdrawal to the MAP program have "prevented" Plaintiffs' assignee, Body Sculpting Discounters, "from demonstrating to customers that it is a legitimate BTL equipment owner . . . because it relies on third-party BTL owners to supply services to its customers." *Id.* ¶¶ 62–64. Even if increasing the price of applicators for non-participants in the MAP program was an antitrust violation (it is not), Plaintiffs do not allege that they ***ever paid*** the increased price. Moreover, those increased prices could never affect the business of non-party Body Sculpting Discounters' referral business, which allegedly "relies on third-party BTL owners to supply services," so any price increases directed at Plaintiffs cannot plausibly affect that non-party business.[3]

Finally, Plaintiffs allege they were harmed by the MAP program because "Breiner could not advertise or communicate a price to any prospective purchaser for less than $850 per treatment

---

[3] It is unclear how Plaintiffs can sustain any antitrust claim based on purported harm to a non-party to this action. Indeed, if Plaintiffs have assigned their interest in the at-issue BTL equipment, it is unclear whether they have *any* standing, including Article III and antitrust standing.

session" and "there was no market for this treatment at this required MAP." *Id.* ¶ 75. Setting aside that the MAP program was voluntary—Plaintiffs were free to participate in and free to exit—Plaintiffs inconsistently allege that "[t]here is virtually no market for these treatment sessions even at [the lower] prices being offered in the secondary market" and that "Breiner has been directly harmed because it is unable to enter the market as no such market exists." *Id.* ¶ 82. In other words, Plaintiffs admit they were unable to sell treatments regardless of their participation in the MAP program. Accordingly, Plaintiffs fail to allege facts showing they were harmed by the MAP program at all, much less by the alleged anticompetitive effects of the program. *Cf. RSA Media, Inc, v. Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (finding plaintiff lacked antitrust standing where it "was not excluded from the market for outdoor billboards because of [defendant's] threats," but by other external factors, and "[a]ny injury suffered by [plaintiff was] therefore unrelated to [defendant's] allegedly exclusionary conduct").

Nor do any of Plaintiffs' alleged harms relate in any way to BTL's patent rights. Nor could they, as Plaintiffs do not claim to be in the business of selling devices, and they do not allege that they have been excluded from using their devices by BTL's patent rights. To the contrary, Plaintiffs claim that they legitimately purchased BTL devices that utilize BTL's patented technology (*see* SAC ¶¶ 21–22, 64, 74–75), and this necessarily includes the right to use those devices. *Quanta Comput., Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 638 (2008) ("The authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control post-sale use of the article.") Further, Plaintiffs do not allege any of the typical antitrust violations related to patents (*e.g.*, fraud on the patent office, sham patent litigation, or tying arrangements).

Accordingly, without any plausible antitrust injury caused by BTL, Plaintiffs lack antitrust standing to pursue any Sherman Act claim.

### B. Plaintiffs Fail to State a Claim Under Section 1 of the Sherman Act.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Therefore, a Section 1 claim must be dismissed "if the conduct alleged 'stems from independent decision [rather than] from an agreement, tacit or express.'" *Bock v. Sloane*, 675 F. Supp. 3d 176, 183 (D. Mass. 2023) (quoting *Twombly*, 550 U.S. at 553); *accord Evergreen Partnering Grp. v. Pactiv Corp.*, 720 F. 3d 33, 43 (1st Cir. 2013). In addition to Plaintiffs' fundamental failure to allege antitrust standing, an antitrust injury, or define the relevant market, *see supra* at § III(A), Plaintiffs' Section 1 claim fails because there is no plausible allegation of a "restraint[] effected by a contract, combination or conspiracy." *Twombly*, 550 U.S. at 553 (quotation omitted).

A manufacturer's unilateral decision to establish conditions on the sale of its products does not constitute a conspiracy under Section 1. *See United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) ("[A manufacturer] may announce in advance the circumstances under which he will refuse to sell."). Sufficient allegations of joint or concerted action are required even in the context of refusal-to-deal or boycott claims, "as a manufacturer generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Evergreen*, 720 F.3d at 43 (cleaned up).

Plaintiffs' Sherman Act claim rests on the *identical* factual nucleus as their dismissed Robinson-Patman Act claim—*i.e.*, that BTL's MAP program and pricing policies for consumable applicators are discriminatory and anticompetitive. *Compare* SAC ¶¶ 73–83, *with* Am. Compl. (Dkt. 21-1) ¶¶ 92–95; *see also* Dkt. 32 at 10 (dismissing Plaintiffs' Robinson-Patman claim because "the MAP program amounts to nothing more than an incentive program to encourage an

12

'align[ment] [of] competitive objectives' between defendant and its retail partners"). Now, in their Second Amended Complaint, Plaintiffs do not allege that the MAP program was the product of an agreement between BTL and any separate actor. At best, Plaintiffs have BTL associates with finance or marketing companies regarding its equipment (*see, e.g.*, SAC ¶ 15)—but the Supreme Court was clear that mere parallel conduct, without any plausible *agreement* between the businesses to restrain competition, cannot plausibly sustain a Section 1 claim. *Twombly*, 550 U.S. at 570.[4] And as this Court noted, the MAP program's terms were "clearly stated in the contract and reasonably shaped the expectations of the parties at the outset." Dkt. 40 at 16. A manufacturer's standard contract terms, voluntarily accepted by buyers, does not constitute the kind of bilateral agreement Section 1 requires. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.").

Because Plaintiffs' allegations allege only unilateral action by BTL to implement a lawful incentive program, the Court should dismiss their deficient Section 1 claim.

### C. Plaintiffs Fail to State a Claim Under Section 2 of the Sherman Act.

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a monopolization claim, a plaintiff must allege "(1) that the defendant possesses 'monopoly power in the relevant market,' and (2) that the defendant has acquired or maintained that power by improper means." *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 7 (1st Cir. 2020)

---

[4] *See also* Dkt. 40 at 27–28 (dismissing Plaintiffs' civil conspiracy claim because they failed to alleged BTL and other businesses "had a unique ability to exert a peculiar power of coercion over plaintiffs when acting in unison" and that "there are no allegations that BTL knowingly gave substantial assistance or encouragement to MMP or Spark to commit a fraud" (cleaned up)).

(quoting *Town of Concord v. Bos. Edison Co.*, 915 F.2d 17, 21 (1st Cir. 1990)). Plaintiffs fail to plausibly allege either element.

As an initial matter, the fundamental deficiencies in Plaintiffs' allegations as to the relevant market preclude their Section 2 claims because they must plead "monopoly power *in the relevant market*." *Id.* at 7 (emphasis added). As explained above, Plaintiffs have not pleaded facts that support any relevant market or how BTL has monopoly power in that market. *See supra* § III(A)(1).

Even if Plaintiffs had adequately pleaded monopoly power, Plaintiffs do not allege that BTL acquired that power by improper means. Plaintiffs' Section 2 allegations are contained in just two paragraphs. SAC ¶¶ 81–82. To support the monopolization claim, Plaintiffs claim only that "BTL's equipment uses patented technology that only BTL possesses and therefore, BTL is the sole distributor of this type of equipment." *Id.* ¶ 81. Plaintiffs stop short of specifying which "BTL equipment uses patented technology that only BTL possesses," *id.* ¶ 41, and alleges "proprietary" technology only for two of the five products at issue in their Second Amended Complaint. *Id.* ¶¶ 8–9.

Regardless, even if BTL's patent rights made it the "sole distributor" of all types of equipment it sells, that would not alone create Section 2 liability. A patent confers the lawful right to exclusive use of that technology, but it "does not necessarily confer market power upon the patentee." *Ill. Tool Works*, 547 U.S. at 45–46. Similarly, the First Circuit has "suggested that the exercise of patent rights is a 'legitimate means' by which a firm may maintain its monopoly power." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1186 (1st. Cir. 1994), abrogated on other grounds *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *see also Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 230 (1st Cir. 1983); *Bos. Sci. Corp. v. Schneider*

14

*(Eur.) AG*, 983 F. Supp. 245, 269 (D. Mass. 1997) ("[C]ourts have recognized an implied and limited "patent" exception to the antitrust laws."); 3 Phillip Areeda & Donald F. Turner, Antitrust Law ¶¶ 704–07, at 117–45 (1978) ("The patent is itself a government grant of monopoly and is therefore an exception to usual antitrust rules.").

Plaintiffs have not pleaded any predatory pricing, deception of a standard-setting organization, exclusive dealing, refusal to deal, or any other anticompetitive conduct. Further, even if Plaintiffs' generalized allegations about "anticompetitive" actions related to the MAP program were relevant to a monopolization claim, there is nothing nefarious or "anticompetitive" about BTL's MAP program that could plausibly create a claim for liability under Section 2 of the Sherman Act. *Cf.* Dkt. 32 at 10 (this Court holding that the MAP program is a voluntary "incentive program" and that its terms were "clearly stated in the contract and reasonably shaped the expectations of the parties at the outset"). Without any plausibly alleged monopoly or improper means, Plaintiffs' Section 2 claims fails as a matter of law.

## IV.    CONCLUSION

For these reasons, Defendant BTL Industries, Inc. respectfully requests that the Court dismiss Count II of the Second Amended Complaint in its entirety, with prejudice. Plaintiffs have had four opportunities to plead an antitrust claim and have failed to state facts sufficient to support any violation of the Sherman Act.

Dated: March 19, 2026                    Respectfully submitted,

                                         */s/ Molly E. Flynn*
                                         **BARNES & THORNBURG LLP**

                                         Molly E. Flynn (admitted *pro hac vice*)
                                         1717 Arch Street
                                         Suite 4900
                                         Philadelphia, PA 19103-2825
                                         Tel: (445) 201-8910
                                         Fax: (445) 201 8901

15

Molly.Flynn@btlaw.com

Heather B. Repicky (BBO # 663347)
Alison C. Casey (BBO # 688253)
Adriana Anita Libutti (BBO # 711815)
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5310
Fax: (617) 316-5311
hrepicky@btlaw.com
acasey@btlaw.com
adriana.libutti@btlaw.com

*Counsel for Defendant BTL Industries, Inc.*

16