**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARK BREINER DDS, LLC and EMSCULPT OF CT, L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> BTL INDUSTRIES, INC., <br><br> Defendant. | Case No. 1:24-CV-12413-FDS |

**DEFENDANT BTL INDUSTRIES, INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COUNT II
OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

In their opposition, Plaintiffs ask this Court to ignore their numerous pleading deficiencies, this Court's own rulings, and basic antitrust elements to save their flawed Sherman Act claims. For the reasons articulated in BTL's opening memorandum in support of its Motion to Dismiss and those explained herein, the Court should dismiss Count II of the Second Amended Complaint with prejudice.

**I.    BTL's Rule 12(b)(6) Motion is Procedurally Proper**

Plaintiffs' opening argument incorrectly claims BTL's Motion to Dismiss is foreclosed by its earlier opposition to Plaintiffs' Motion to Amend. *See* Dkt. 55 ("Opp.") at 1–2, 4. But the First Circuit and its district courts have consistently held that granting an amendment over a futility objection does not bar a future Rule 12(b)(6) motion. *See In re Cabletron Sys., Inc.,* 311 F.3d 11, 21 n.2 (1st Cir. 2002) (finding plaintiff was "incorrect" to suggest the court's amendment ruling "foreclosed later consideration in the district court of the defendants' subsequently renewed motion to dismiss"); *Hypertherm, Inc. v. Am. Torch Tip Co.*, No. CIV. 05-CV-373-JD, 2007 WL 2695323, at *3 (D.N.H. Sept. 11, 2007) (finding plaintiff was "mistaken" in arguing defendant's Rule

12(b)(6) motion was foreclosed by the court granting leave to amend "over [defendant's] futility objection" because that ruling "does not bar a motion to dismiss"). Further, BTL specifically noted in its motion that it was not "revisit[ing] the futility arguments raised in [its] opposition to Plaintiff's motion for leave to amend." Dkt. 51 at 1 n.1. Plaintiffs' argument is unfounded.

## II.     Plaintiffs Have Not Plausibly Articulated a Market, Injury, or Standing

Plaintiffs claim BTL is holding them to a burden of proof higher than that required by Rule 12(b)(6) regarding their allegations of "market definition, market power, and anticompetitive effects." Opp. at 5. That is untrue. Instead, BTL's motion emphasizes that the elements of market definition, a defendant's market power, anticompetitive harm, and antitrust standing are elements of a viable Sherman Act claim. Dkt. 51 at 3, 11. First Circuit precedent is clear that plausible allegations of these elements are necessary at the pleadings stage. *Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 296 (1st Cir. 2022) (affirming dismissal of some antitrust claims and reversing dismissal of others, explaining that a plaintiff must "allege[] facts that plausibly delineate a relevant market"); *see also Walker v. Analog Devices, Inc.*, No. 22-11934-PBS, 2023 WL 5353764, at *6 (D. Mass. Aug. 4, 2023) (dismissing plaintiff's antitrust claim because, among other deficiencies, the complaint "fail[ed] to define a relevant market"), *aff'd* No. 23-1739, 2024 WL 4190856, at *1 (1st Cir. May 30, 2024) (affirming because plaintiff "failed to call into question the district court's conclusion that he lacked standing[,] he did not allege a cognizable antitrust injury[, and] failed to state a claim under the Sherman Act").

Plaintiffs cite *Vázquez-Ramos* for the proposition that they "are not required at this stage to prove market power or definitively establish a relevant market," referencing a single paragraph of their complaint that supposedly defines the relevant market. *See* Opp. at 6; *see also* SAC ¶ 74 ("BTL manufactures and sells the body-contouring and/or skin tightening equipment. BTL is the

only manufacturer of these particular types of machines as it holds the only patents on the specific type of technology used in these machines."). But the scant information alleged in that paragraph does not satisfy the pleadings requirements of a viable Sherman Act claim.

For example, this Court has previously emphasized that "[a]t the pleading stage, a plaintiff plausibly must allege that the products in the defined market are not reasonably interchangeable for products outside the defined market, and that consumers are not likely to substitute other products if the given product becomes more expensive." *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 56 (D. Mass. 2020) (finding a plaintiff's market definition "barely cross[ed] the required threshold of specificity"). As BTL explained in its motion, Plaintiffs' own alleged facts suggest there ***are*** substitute products in the market for products supplied by BTL. Dkt. 51 at 5. And even a market implausibly defined as BTL's own products would be insufficient to pass muster. *Cf. Bryan v. Ascend Learning, LLC*, No. 24-cv-10583-ADB, 2025 WL 2239250, at *4 (D. Mass. Aug. 6, 2025) (dismissing plaintiff's antitrust claims when plaintiff "in essence alleg[ed] that [d]efendants monopolize sales of their own products," and found that plaintiff did not plausibly allege market power without plausible allegations of "reasonable interchangeability and cross-elasticity of demand" or a "well-defined product market"). This flaw, in addition to the others explained in BTL's motion, prevents Plaintiffs from satisfying the basic elements of their Sherman Act claims, including antitrust standing. *See* Dkt. 51 § III(A).

## III.    Plaintiffs Ask This Court to Ignore Its Prior Rulings

Much of Plaintiffs' opposition to BTL's arguments rests on their unsupported request for this Court to ignore its rulings in this case regarding Plaintiffs' prior federal antitrust claims. Last year, this Court dismissed Plaintiffs' Robinson-Patman Act ("RPA") claim. *See* Dkt. 32. In support of its instant motion to dismiss, BTL explained how the Court's reasoning as to Plaintiffs' RPA

3

claim directly applies to Plaintiffs' near-identical Sherman Act claims. Dkt. 51 at 1–2, 12–13, 15. In their opposition, Plaintiffs claim—without any support—that BTL "improperly" relied on the Court's prior ruling because it has "no bearing" on their Sherman Act claims. Opp. at 4. Plaintiffs are mistaken.

Plaintiffs' arguments directly contradict this Court's prior rulings. For example, Plaintiffs repeatedly mischaracterize the MAP program as "mandated," "imposing and enforcing an artificial price floor," and having "coercive enforcement mechanisms." Opp. at 8–9; *see also id.* at 2 (describing the parties' bilateral contract as a "coercive resale price maintenance scheme"); *id.* at 10 (claiming the MAP program is "not optional in any meaningful senses [sic]"). But this Court found—based on the face of the parties' contract and Plaintiffs' pleadings—that the MAP program "amounts to nothing more than an incentive program to encourage an 'align[ment] [of] competitive objectives' between [BTL] and its retail partners." Dkt. 32 at 10 (quoting *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 866 (6th Cir. 2007)).

When considering this Court's prior ruling, Plaintiffs' opposition falls apart. For example, Plaintiffs argue that they have antitrust standing because the MAP program purportedly "requires and coercively enforces that providers advertise and sell services at $850 per session." Opp. at 8; *see also id.* (claiming that there is a direct causal connection between BTL's actions and their harm because BTL "enforce[ed] an artificial price floor").[1] But their argument depends on an interpretation of the MAP program that goes directly against the Court's prior ruling.

Further, Plaintiffs rely on *Simpson v. Union Oil Co. of Cal.*, 377 U.S. 13 (1964), to argue they have sufficiently alleged prohibited conduct because the MAP program "[is] not optional in

---

[1] Plaintiffs also argue that BTL "Defendant oversaturates the market by selling the same devices to numerous providers within the same geographic area." Opp. at 8 (citing SAC at ¶¶ 43, 51). But their Second Amended Complaint contains no allegations to support the argument that BTL sold to provider "within the same geographic area." *See generally* SAC.

any meaningful senses [sic]" and likened it to "coercively imposed agreements that restrain trade[.]" Opp. at 10. But that case does not support their argument. In *Simpson*, the defendant, a gasoline company, required all retailers of its product to sign an agreement that leased a retail outlet to the retailer for one year, permitted the retailer to sell defendant's product on consignment, and set minimum retail prices for gasoline charged by the retailer during that year; however, the defendant-company coercively would not agree to lease renewals "if the conditions prescribed by the [defendant] [were] not met." *Simpson*, 377 U.S. at 14–15. In contrast, as this Court explained, "the arrangement of the MAP program amounts to nothing more than an incentive program to encourage an 'align[ment] [of] competitive objectives' between [BTL] and its retail partners." Dkt. 31 at 10 (quoting *Smith Wholesale*, 477 F.3d at 866). Nothing about the MAP program was coercive: "Plaintiffs were not prohibited from participating in that discount program," *id.*, nor was their participation in the MAP program required to start or continue doing business with BTL, *see generally* SAC, Exhibit A (copies of the sales contract containing BTL's Terms and Conditions of Sales). Plaintiffs cannot ignore this Court's prior rulings, especially when they directly inform the plausibility of their rehashed antitrust claims.

**IV.    Plaintiffs' Allegations of Unilateral Conduct Cannot Support a Section 1 Claim**

Plaintiffs' opposition also makes clear that their Section 1 claims fail as a matter of law. Section 1 claims do not apply to a defendant's independent actions. Dkt. 51 at 12–13. Indeed, a Section 1 claim **must** fail without plausible allegations of "concerted action." *Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 16 (1st Cir. 2004). Ignoring that, Plaintiffs make the baseless argument that their Section 1 claims are supported by "well-pleaded allegations of agreements between Defendant and Plaintiffs[.]" Opp. at 9. This argument demonstrates a deep misunderstanding of antitrust law.

The First Circuit has made clear that an actionable claim under Section 1 requires "concerted action" between defendant and another party. *Euromodas*, 368 F.3d at 16 (citing *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 761 (1984)). Concerted action occurs when "two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit." *Walker*, 2023 WL 5353764, at *5 (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)); *see also Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 13 (1st Cir. 2003) ("[A]greements between two or more actors who operate within and for the benefit of a single economic enterprise do not satisfy the concerted action requirement of Section 1."). In other words, concerted activity "is activity in which multiple parties join their resources, rights, or economic power together ***in order to achieve an outcome*** that, but for the concert, would naturally be frustrated by their competing interests[.]" *Va. Vermiculite Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 282 (4th Cir. 2002) (emphasis added).

A vertical, bilateral contract between a plaintiff-purchaser and defendant-seller (like here) does not constitute the kind of "concerted action" required to sustain a Section 1 claim. The Sherman Act requires more. *See, e.g.*, *Monahan's Marine, Inc. v. Bos. Whaler, Inc.*, 676 F. Supp. 379, 381 (D. Mass. 1987), *aff'd*, 866 F.2d 525 (1st Cir. 1989) (explaining that Section 1's concerted action requirement is not met "by the mere circumstance of there being a contract"); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1198–99 (S.D. Tex. 2009) ("[T]he fact that a person accepts the terms of a contract does not, without more, generate the type of concerted action necessary to violate Section 1"). To hold otherwise would necessarily mean that Plaintiffs acted *in concert* with BTL with an alleged *purpose* to harm competition. That cannot possibly be what Plaintiffs intended and would be an illogical interpretation of both their

allegations and the parties' contracts.[2] The absence of any plausibly alleged concerted action is yet another reason Plaintiffs' Section 1 claim must be dismissed.

## V.    Plaintiffs' Allegations Undermine Their Section 2 Arguments

Perhaps knowing their Section 2 claim faces insurmountable hurdles, Plaintiffs pivot to a new theory of harm. Plaintiffs' new argument, however, is directly contradicted by their own allegations.

Plaintiffs argue that BTL, by virtue of its patents alone, constitutes a monopoly in an undefined product or geographical market. Opp. at 10–11. This, again, is wrong as a matter of law. *See Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 45–46 (2006) ("Congress, the antitrust enforcement agencies, and most economists have all reached the conclusion that a patent does not necessarily confer market power upon the patentee. Today, we reach the same conclusion[.]"). But even if that were true, Plaintiffs' argument that BTL improperly maintained its purported monopoly "by imposing contractual restrictions that prevent resale or transfer and by maintaining a perpetual security interest in the equipment," is unsupported by their own pleadings. Opp. at 11.

Plaintiffs argue—without any factual or legal support—that these alleged contractual restrictions "effectively eliminate[] any secondary market, lock[] providers into its ecosystem, and raise[] barriers to entry and exit." Opp. at 11. But as this Court summarized when dismissing Plaintiffs' RPA claims, Plaintiffs allege BTL has ***permitted*** "the emergence of a secondary market for Emsculpt equipment, through which other buyers can purchase defendant's devices at steep discounts." Dkt. 32 at 10; *see also* SAC ¶ 41 (alleging buyers can purchase defendant's equipment

---

[2] To support this argument, Plaintiffs again cite the Supreme Court's decision in *Simpson*. Opp. at 10 (citing *Simpson*, 377 U.S. 13). But *Simpson* is inapposite because the Supreme Court did not once address the issue of unilateral conduct or concerted action under Section 1 in that decision.

on the secondary market for "75% - 90% off the original equipment price"). Indeed, Plaintiffs allege that these secondary-market buyers have "identical but non-price-restrained" BTL equipment. SAC ¶ 41.

Because Plaintiffs' own pleadings allege the existence of a secondary market—directly contradicting their theory that BTL's contractual restrictions eliminated competition—the Court should dismiss Plaintiffs' implausible Section 2 claims.

## CONCLUSION

For all the reasons in BTL's opening memorandum and explained further herein, BTL requests the Court dismiss Count II with prejudice.

Dated: June 10, 2026                    Respectfully submitted,

                                        /s/ Molly E. Flynn
                                        **BARNES & THORNBURG LLP**

                                        Molly E. Flynn (admitted *pro hac vice*)
                                        1717 Arch Street
                                        Suite 4900
                                        Philadelphia, PA 19103-2825
                                        Tel: (445) 201-8910
                                        Fax: (445) 201 8901
                                        Molly.Flynn@btlaw.com

                                        Heather B. Repicky (BBO # 663347)
                                        Alison C. Casey (BBO # 688253)
                                        Adriana Anita Libutti (BBO # 711815)
                                        One Marina Park Drive, Suite 1530
                                        Boston, MA 02210
                                        Tel: (617) 316-5310
                                        Fax: (617) 316-5311
                                        hrepicky@btlaw.com
                                        acasey@btlaw.com
                                        adriana.libutti@btlaw.com

                                        *Counsel for Defendant BTL Industries, Inc.*

8